IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LLOYD KELLEY,
    *Plaintiff*,

v.

RINGO LANZETTI, RICHARD
METLER, RILEY UGLUM, SALE
PILGERAM, STEOHEN ZUPANC, and
EDWIN A. MEAD
    *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 4:22-cv-2168

**DEFENDANTS LANZETTI, METLER, UGLAM, PILGERAM, ZUPANC AND MEAD'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
FOR LACK OF JURISDISCTION AND FAILURE TO
STATE A CLAIM PURSUANT TO FRCP 12(B)**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW Defendants, Ringo Lanzetti ("**Lanzetti**"), Richard Metler ("**Metler**"), Riley Uglum ("**Uglum**"), Dale Pilgeram ("**Pilgeram**"), Stephen Zupanc ("**Zupanc**") and Edwin A. Mead ("**Mead**") (collectively, "**Defendants**" and/or "**Steadfast Lenders**") and file this Motion to Dismiss Plaintiff's Amended Complaint Pursuant to FRCP 12(b)(1), (5), and (6) ("**Motion**") and respectfully show the Court as follows:

## I.    NATURE AND STAGE OF PROCEEDING

1.    This is a suit brought by a lawyer, Lloyd Kelley ("**Plaintiff**" or "**Kelley**"), against six (6) individuals who lent money to a company called 829 Yale Holdings, Inc. d/b/a Steadfast 829 Yale Holdings, Inc. ("**Steadfast**") and participated in an underlying state court lawsuit that have since been resolved. Although it is unclear, Plaintiff claims that Defendants somehow violated Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 ("**ECPA**") when their

then attorney, Christopher Ramey ("**Ramey**") attached a copy of a recording and transcript of a telephone call between Kelley and his alleged client, Ali Choudhri ("**Choudhri**"),[1] to a pleading filed in the underlying state case. No dispute exists that the recording and transcript were obtained by Choudhri's former employee, Christopher Wyatt ("**Wyatt**"), who recording the conversation at Choudhri's request. Choudhri has never claimed that Wyatt violated the ECPA and subsequently dismissed his claims against Wyatt for theft of trade secrets field in the state court.[2] Regardless, the Defendants and Ramey were permitted to rely upon the uncontradicted sworn testimony of Wyatt to file the recording and transcript in the underlying state case and subsequent federal court cases. Kelley has not and cannot plead that the Defendants have published the recording and transcript in any other forum. Consequently, Kelley's claim for violation of the ECPA by the Defendants must be dismissed as a matter of law because the Defendant's pleadings are protected by the litigation privilege recognized under federal law. *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1220 n.6 (5th Cir. 1987) (as a matter of law, communications made during a court's proceedings are absolutely privileged.)

2.      Similarly, Kelley's claims against the Defendants for tortious interference with a contract and prospective business relations, defamation, conspiracy, aiding and abetting and principal agent liability are premised upon actions and statements made by Ramey during the state court litigation. Plaintiff fails to plead any action or statements made by the Defendants outside of the scope of litigation that can sustain his claims against them. Moreover, Kelley has not pled that he suffered any damages as result of the Defendants' conduct required to maintain his claims.

---

[1] The Defendants say alleged because it is unclear who Kelley has represented, represents or may represent in the underlying state and federal cases besides himself.

3.     This Court must dismiss Kelley's claims against the Defendants as plead because they are unsupported in fact or law.

## II.     ADOPTION BY REFERENCE

Defendants adopt the following briefs, arguments, authority, and evidence:

- Defendant Randy Sorrels' Amended Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction and Motion for Summary Judgment; Civil Action No. 4:23-CV-00807; *Lloyd Kelley v. Randall Sorrels and Sorrels Law*; in the United States District Court, Southern District of Texas, Houston Division;

- Defendants Randall Sorrels and Sorrels Law's Second Amended Motion for Summary Judgment and Motion to Dismiss; Civil Action No. 4:23-CV-00807; *Lloyd Kelley v. Randall Sorrels and Sorrels Law*; in the United States District Court, Southern District of Texas, Houston Division;

- Defendants Ramey and Breitenwischer's Motions for Summary Judgement and Motion to Dismiss for Lack of Jurisdiction; Civil Action No. 4:22-CV-2175; *Lloyd Kelley v. Joe Saenz* et al; in the United States District Court, Southern District of Texas, Houston Division; and

- Motion for Summary Judgment, Motion to Dismiss Complaint filed by Ringo Lanzetti, Edwin Meade, Richard Metler, Dale Pilgrim, Riley Uglum, and Stephen Zupanc filed in the present case at DKT. No. 21. To prevent redundant filing, the attachments to DKT. No. 21 will be referred to in this brief as DKT. No. 21 Ex. [corresponding exhibit number].

## III.     PROCEDURAL HISTORY

4.     Plaintiff filed this lawsuit on June 30, 2022 [Dkt. No. 1], in this Court and did not request summons on the Defendants for 105 days [Dkt. No. 4]. Defendants Lanzetti and Pilgeram filed an initial Motion to Dismiss on December 23, 2022 [Dkt. No. 8]. Zupanc was not served until December 7, 2022 or 159 days after suit was filed and it is unclear if or when the remainder of the Defendants were served with summons. [Dkt. No. 9] Regardless, on April 18, 2023, the Defendants filed a Motion for Summary Judgment, Motion to Dismiss. [Dkt. No. 21].

5.      On May 13, 2025, this Court held a conference wherein it ordered Plaintiff to refile its Complaint by July 2, 2025. [Dkt. No. 44]. Kelley failed to do so and filed his Amended Complaint on July 3, 2025. [Dkt. No. 45].

## IV.      RELEVANT FACTUAL BACKGROUND

6.      The dense and elaborate factual background in this lawsuit has been presented at length prior to the date of filing this Motion. Plaintiff's primary contention is that Defendants' former counsel, Ramey, filed audiotapes and certified transcripts of Kelley and his on again/off again client, Ali Choudhri, revealing various damning admissions regarding a property located at Yale Street in Houston, Texas. However, Ramey properly filed the legally obtained audiotapes and certified transcripts of Kelley and Ali Choudhri's conversations as evidence in various lawsuits to which they were relevant, on behalf of his clients, including the Defendants, in Ramey's role as litigation counsel for them opposing Kelley, Choudhri and a host of co-conspirators. Plaintiff's Amended Complaint is simply a rehash of his claim that Wyatt did not have the authority to tape record he and Choudhri despite being in the room when the conversation occurred. Kelley is also a defendant in a pending federal lawsuit predicated in part on these tapes.[3]

7.      Plaintiff further judicially admits he doesn't have damages, a prerequisite for most of his causes of action.[4] During a hearing with Judge Rosenthal, Kelley stated as follows:

> THE COURT: *But just so I fully understand, what Mr. Kelley wants is an injunction. He's not seeking damages, although he refers to them in his pleadings. Is that right, Mr. Kelley?*
>
> MR. KELLEY: *Yes, ma'am. It's limited at all times to statutory damages.*[5]

---

[3] *See* Plaintiff's Original Verified Complaint, Motion to Appoint Receiver, Petition for Declaratory Judgement, Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, in Cause No. 4:22-cv-00905; *Steadfast 829 Holdings, Inc. v. 2017 Yale Development, LLC, Jetall*, In the United States District Court for the Southern District of Texas, Houston Division.
[4] *See* Transcript of Hearing Before Judge Rosenthal attached hereto as Exhibit 1 at page 56.
[5] *Id.*

4

8. The audiotapes and certified transcripts of Kelley and Ali Choudhri's conversations Kelley alleges violate the ECPA have been introduced as evidence, for four (4) years now, in dozens of legal proceedings, including Cause Nos. 2016-64847; *2017 Yale Development, LLC v. Steadfast Funding, LLC*, In the 190th Judicial District Court, Harris County, Texas, Case No. 21-40365; *Fugedi v. Steadfast Funding, et al.*, in the United States Fifth Circuit Court of Appeals; 4:24-cv-404; *829 Yale Holdings, Inc., et al v. Ali Choudhri, et al,* and many others. This evidence supported Steadfast's dispositive pleadings, yet Kelley and Choudhri's responsive pleadings in those cases failed to allege that the recordings were obtained illegally or were not authentic.

9. Kelley's Amended Complaint alleges that the audiotapes at issue were intercepted by Chris Wyatt, who recorded oral phone communications between Kelley and Choudhri. [Dkt. No. 45]. Unrebutted evidence proves that these phone communications were broadcast on Choudhri's speakerphone, and Wyatt, at Choudhri's request, was present and recorded these communications with his own cell phone. Because Wyatt recorded the communications, he clearly consented to the recording and there is no violation of any law.

A. ***Ramey diligently confirmed the legality of the recordings:***

10. Ramey had spent years representing the numerous Steadfast Lenders in complex litigation, with numerous cause numbers in various courts, against Kelley, Ali Choudhri, 2017 Yale and other parties.[6] Kelley at all times alleged that he was simply counsel for various parties at different times.[7] Frankly, Kelley appeared to represent all of the defendants as he would often speak on their behalf at various hearings.

---

[6] *See* Declaration of Christopher B. Ramey attached hereto as **Exhibit 2**.
[7] *Id.*

11.     In the summer of 2021, Ramey was contacted serendipitously by a reputable attorney, Omar Khawaja, who represented a whistleblower witness who turned out to be Wyatt with information relevant to the litigation Ramey was handling. [Dkt. No. 21 at Exs. 48-51]. Wyatt, with counsel present, informed Ramey that he had been working for Choudhri or his entities at times relevant to the Steadfast suits and was instructed by Choudhri to participate in phone calls with Kelley and others. [Dkt. No. 21 at Exs. 48-51]. He stated that Ali instructed him to record those calls, and that the conversations were relevant to the litigation Ramey was handling. [Dkt. No. 21 at Exs. 48-51]. Wyatt stated that he was personally present for the calls, recorded the calls with his phone, at the direction of Choudhri, and still possessed the original recordings on his phone. Id. He confirmed that the recordings were authentic originals. [Dkt. No. 21 at Exs. 48-51].

12.     Wyatt also stated that Choudhri had also texted Wyatt instructing him to make the recordings. [Dkt. No. 21 at Exs. 48-51]. Wyatt provided Ramey with copies of Choudhri's texts, proving Choudhri's consent as well as that of Wyatt. [Dkt. No. 21 at Exs. 48-51]. As such, Choudhri and Wyatt were clearly present for the conversations, consented to the recordings, and they were therefore legally obtained. Wyatt also explained why Choudhri wanted to record Kelley, *infra*, which explanation made sense given the known facts, *infra*.

13.     Wyatt, through his attorney, also provided Ramey with sworn declarations, under penalty of perjury, proving that the recordings were legally obtained. [Dkt. No. 21 at Exs. 48-51]. These Declarations of Chris Wyatt stated, among other things, that:

> *"I am the Former Chief Operating Officer of Jetall, Inc., and reported to Ali Choudhri. . . .**I was in the room and a participant on a call with Ali Choudhri and Lloyd Kelley, and recorded that call at Ali's express request, and with his consent**. . . . I made this recording in Mr. Choudhri's office, in his presence, as a participant on the entire call…. **I was also in the room and a participant in additional conversations with Ali Choudhri, Michelle Fraga, Brad Parker, and Lloyd Kelley, and recorded those conversations at Ali's express request, and with his consent**. I*

6

*made these recordings in Mr. Choudhri's office, in his presence, as a participant in the entire conversations. . . ."*

[Dkt. No. 21 at Exs. 48-51].

14.      Ramey diligently researched applicable law proving the legality of the tapes and confirmed with Wyatt and Khawaja their legality pursuant to that research. [Dkt. No. 21 at Exs. 48-51]. It was also apparent from the sound that Wyatt and Choudhri were together in the same room, and Kelley and others were on the phone, just as Wyatt swore under oath.[8] The original recordings were still on Wyatt's personal phone as displayed to Ramey, so he was obviously present. *Id.*[9] The context of the audiotapes further ensured that consent was given by Choudhri and ultimately, Wyatt, to recording the conversations. [Dkt. No. 21 at Exs. 48-51]. Ramey sent the recordings to certified court reporters for transcription, who noted no irregularities and transcribed the conversations. [Dkt. No. 21 at Exs. 48-51][10] They were then properly filed as evidence in numerous cases without dispute by Choudhri or Kelley.

**B.      *The Context made it clear that Choudhri wanted to record the conversations:***

15.      In summary, 2017 Yale Development, LLC fraudulently induced millions of dollars of loans from Steadfast (Ramey's clients), never paid a cent back, and sued Steadfast and other parties, ultimately losing a multi-million-dollar judgment on the lenders' counterclaims. In an effort to denude that judgment, during the trial, 2017 Yale made a fraudulent transfer of 2017 Yale's only asset, Steadfast's loan collateral property worth millions of dollars, to the "Carb Pura Vida Trust."

---

[8] *See* Exhibit 2

[9] *Id.*

[10] Wyatt also later submitted his phone and the recordings to an independent forensic examiner who proved that the recordings were original and authentic. It is noteworthy that Choudhri and Kelley opposed Wyatt's forensic verification.

16.     Kelley and his 'clients' and associates had all testified, sworn, and argued in courts that 2017 Yale was simply Kelley's client; was a legitimate borrower owned by Brad Parker; that Choudhri was just a witness; and the Carb Pura Vida Trust was a legitimate third-party bona fide purchaser of Steadfast's collateral from 2017 Yale (right before the judgment and in spite of Steadfast's recorded lien). Kelley and his witnesses all represented and testified in multiple courts that neither Kelley nor Choudhri had anything to do with owning 2017 Yale, inducing the loans, or defaulting on the loans, and that they were also not involved in the fraudulent transfer of Steadfast's collateral to the Carb Pura Vida trust.

17.     However, prior to being approached by Wyatt and Khawaja, Ramey had already been approached by another whistleblower, and his attorney, David Alvarez ("Alvarez") and Timothy Trickey, in February of 2021 (and again later on), who executed and filed sworn declarations proving, among other things, that Kelley and Choudhri secretly owned both the borrower/judgment debtor 2017 Yale, and the fraudulent transferee of Steadfast's collateral, the "Carb Pura Vida Trust". See e.g. [Dkt. No. 21 at Exs. 55-56]. The loans, litigation, and transfer of collateral to the trust were all fraudulent schemes perpetrated by Kelley and Choudhri, to steal Steadfast's funds and collateral property.

18.     The Wyatt tapes corroborated Alvarez' whistleblower declarations and explained Choudhri's motives. Kelley and Choudhri were arguing about which of them would benefit from the schemes Alvarez had outlined in his whistleblower declarations. As Wyatt explained, and the tapes made obvious, Choudhri felt that Kelley had duped him, as well as Steadfast, with the trust transfer, and was recording Kelley to ensure that he could benefit once Steadfast's collateral was stolen. He also wanted to use Kelley's admissions of wrongdoing on the tapes to blackmail Kelley

8

from pursuing Choudhri's multimillion dollar preexisting debt to Kelley, arising from other matters.

19.     As such, all direct evidence, sworn testimony, circumstantial evidence, and all inference possibly considered by Ramey all left the only conclusion – that the recordings were legally obtained and were proper for use as evidence in legal proceedings.

20.     Under the ECPA, there is no affirmative duty to investigate or conclusively ascertain the legality of an interception where, as here, the information available tends to show that one of the parties to the intercepted conversation was the one who made the recording. Boswell v. Fisher, No. 05-80781-CIV, 2006 WL 8433669, at *6 (S.D. Fla. Apr. 24, 2006). In Boswell, the court granted summary judgment against claims for violation of 18 U.S.C. § 2511(1)(d) because the evidence was insufficient to create an issue of fact as to whether Fisher had reason to know the recordings were unlawful when he used them. *Id.* at 5. "The information available to Fisher was that Boswell himself had made the recordings and had therefore consented to them. Having that understanding, there would have been no need for Fisher to make further inquiry." *Id.* at *6.

21.     At the time of filing, Ramey had overwhelming evidence that the recordings were legal, and no evidence whatsoever hinting otherwise, either direct or circumstantial.[11] Therefore, the Court should dismiss Kelley's claim under the ECPA because Ramey and the Defendants presented unrebutted evidence that they did not know or have reason to know that the recording of the communications was illegal or violated the ESAP. See Celotex, 477 U.S. at 322–23. Ramey and the Defendants are also entitled dismissal because Kelley has not plead that they were aware of any evidence contradicting Wyatt's Declaration. See Nola Spice Designs, LLC v. Haydel Enters., Inc., 783 F.3d 527, 536 (5th Cir. 2015).

---

[11] *See* Exhibit 2.

9

22.     Ramey filed the tapes as evidence in numerous pleadings in July of 2021 in all of the pending litigation. In none of the responsive briefs did Kelley, Choudhri, or anyone allege that the recordings were illegally made – for years.[12]

23.     Kelley has deposed Ramey, Wyatt, Alvarez, and others in the years since, numerous times, and sued his own client and one-time whistleblower, Alvarez, in an apparent attempt to intimidate him. Defendants were not privy to Alvarez or Wyatt's depositions, but obtained transcripts, in which Kelley admitted that the tapes were 'him yelling at Choudhri', further supporting the context for Choudhri's desire to record Kelley and evidencing consent. Exhibit 272. Despite Kelley's intimidation efforts, Alvarez confirmed the authenticity of the documents supporting the tapes, and Kelley admitted that the tapes were authentic copies of him screaming at Choudhri:

> *Kelley:* · *Uh, you have been given some kind of tapes 4· called "The Wyatt Tapes"...as far as those -- that --20· that recording, it was me not happy with getting burned 21· one more time.· That's basically me -- me screaming....*" <u>Exhibit 272</u>, Pg. 240-1.

24.     Wyatt since, with his own counsel, in depositions and his own pleadings in his own case, has corroborated everything in his Declarations (Choudhri meekly non-suited the case when faced with the threat of being forced under oath). *Id.* Kelley deposed Wyatt on January 10, 2023, also without Movants' knowledge:

> *Q. Did you have recordings between Choudhri and Kelley?*
> *Wyatt: Yes.* Wyatt depo at 128.
>
> *Q. How were the recordings made?*
> *A. I had recordings on my phone when I was a party to the conversation, and I believe Mr. Choudhri emailed me recordings because he records everything.*
> *Id.* at 129.

---

[12] Ex. 2.

*Q. And your counsel also produced tape 20 recordings to Mr. Ramey, true?* **A. Correct.** *Id.* at 177.

*Q. So every time that you and Mr. Ramey met in person, you took with you Mr. Khawaja?* **A. Correct.** *Id.* at 178.

*Q. Now, when you -- when you say your lawyer, Mr. Khawaja, got this subpoena, do you know what was produced to Mr. Ramey? MR. MAHENDRU: Objection, form… Q. Were the tapes produced to Mr. Ramey?* **A. I believe they were.** *Id.* at 184.

**A. Ali Choudhri directed me to record those conversations with these lawyers. He did it on many occasions. But he wanted to use those because he really wanted to use those in order to take down Mr. Kelley is what he told me.** *Id.* at 185.

*Did you record them yourself?* **A. I recorded them while I was in the room.** *Q. And you used what device to record them?* **A. My phone.** *Q. Were you in -- during that first one were you in the room the entire time?* **A. Yes**. *Q. Did you ever get up and leave the room to go to the bathroom or to get a drink?* **A. No.** *Q. What about the second time? Were you in the room the entire time?* **A. Yes.** *Q. And what about the third time? Were you in the room the entire time?* **A. Yes.** *Id.* at 189-90.

**he told me he taped every call because he wants to use those calls so that he can leverage or threaten anybody that works with him. That's why. I only recorded telephone calls when he specifically told me "record this" 14 or -- and that is the only time I recorded anything, period. When I was in the room and when he told me to record it.** *Id.* at 198**.**

*Q. So do you have anything other than an oral instruction from Mr. Choudhri such as an email or*

11

*text message that you have seen instructing you to*
*tape a phone call?*
*A. Yes.*
*Q. Okay. What do you have?*
*A. There are text messages.*
*Id.* at 182.

25.    Kelley has had years to develop evidence, but all the evidence proves that Ramey and the Defendants legally filed the evidence and never had reason to believe that Wyatt recorded the tapes illegally.

## V.    LEGAL STANDARDS

### A.    Standards for Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

26.    Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Ramming v. U.S., 281 F. 3d 158, 161 (5th Cir. 2001). The plaintiff bears the burden of proof that jurisdiction exists. Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). Steadfast need only prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence. Ballew v. Cont'l Airlines, Inc., 668 F.3d 777, 781 (5th Cir. 2012).

27.    When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, as is the case here, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). In the Court's subject matter jurisdiction analysis, allegations in the complaint are presumed to be true. *Young v. Portfolio Recovery Assocs., LLC*, No. 6:22-CV-00081-JCB, 2022 WL 2163821, *1 (E.D. Tex. May 20, 2022).

28.    In examining a Rule 12(b)(1) motion, the District Court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted **only** if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (emphasis added).

29.     As demonstrated by Plaintiff's live pleadings and this Response, Steadfast established subject matter jurisdiction and Defendant Choudhri's Motion should be denied.

**B.     Standards for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

30.     The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Rule 12(b)(6) allows dismissal only if a plaintiff fails "to state a claim upon which relief may be granted." *Robinson v. Stephens*, No. 6:16-cv-485, 2017 WL 1399649, *2 (E.D. Tex. Feb. 15, 2017) (citing Fed. R. Civ. P. 12(b)(6)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010).

**C.     Pleading Standards under Fed. R. Civ. P. 9(b) and Related Motions for More Definite Statement under Fed. R. Civ. P. 12(e)**

31.     Fed. R. Civ. P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." A complaint alleging fraud must specify the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [the person] obtained thereby." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

32.      "Put simply, Rule 9(b) requires the complaint to set forth the 'who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). "[T]he particularity demanded by Rule 9(b) differs with the facts of each case." *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 613 (S.D. Tex. 2001) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)). Courts have emphasized that Rule 9(b)'s ultimate meaning is context specific. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

33.      When a party invokes Rule 12(e) to challenge a complaint's compliance with Rule 9(b), it necessarily asks the court to order the plaintiff to replead rather dismiss the fraud claim. *Lindsey v. Dyncorp Int'l, LLC*, No. H–09–0700, 2009 WL 1704253, *1 (S.D. Tex. June 17, 2009). Under Rule 12(e), the Court must determine whether the complaint is such that "a party cannot reasonably be required to frame a responsive pleading." Courts have long noted that motions under Rule 12(e) do not permit dismissal of the complaint for failure to state a claim. *Mitchell v. E-Z Way Towers, Inc.*, 269 F. 2d 126, 130 (5th Cir. 1959).

34.      Rule 12(e) motions are generally disfavored and are used "to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." *Diaz v., Kettley Trucking, Inc.*, No. 1:20-CV-51, 2020 WL 1666166 (E.D. Tex. April 2, 2020) (citing *Jiminez v. Regius Verus Foods, LLC*, No. 5:14-CV-1021, 2015 WL 128157, at *1 (W.D. Tex. Jan. 8, 2015) (quoting *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001)). Meanwhile, a Rule 12(e) motion is inappropriate where the information sought can otherwise be obtained by discovery. *Suarez v. Nueces Cnty., Tex.*, No. C-08-217, 2008 WL 4186904, *2 (S.D. Tex. Sept. 9, 2008).

14

## VI.   ARGUMENT AND AUTHORITIES

**A.   Plaintiff Demonstrated Subject Matter Jurisdiction in this Court**

35.   This Court lacks subject-matter jurisdiction because Kelley has no viable federal law claim.

### a. Elements of Claims under the Federal Wiretap Act and the Texas Wiretap Act

36.   Kelley's Amended Complaint alleges that it is an action to enforce the ESAP and the Texas Wiretap Act, which have the same elements. *See Alameda v. State*, 235 S.W.3d 218, 220, 222 (Tex. Crim. App. 2007) (noting that "the federal wiretap statute is substantively the same as the Texas statute").

37.   Section 2511(1)(a) of the Federal Wiretap Act makes it illegal to (1) intentionally intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). Kelley's Amended Complaint does not claim that the Defendants, individually, intercepted any communication, but claims that their counsel, Ramey, violated Section 2511(1)(c) of the Act, which imposes liability on any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C.S. § 2511(1)(c).

38.   But there is no violation of the ESAP if any of the parties consented to the interception:

> It shall not be unlawful under this chapter [18 USCS §§ 2510 *et seq.*] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception . . . .[13]

---

[13] This Act is formally known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 and the Communications Assistance for Law Enforcement Act of 1994. *United States v. Moore*, 452 F.3d 382, 386 n.2 (5th Cir. 2006). For brevity, Defendants refer to it as the "Federal Wiretap Act."

39.      18 U.S.C. § 2511(2)(d). While "18 U.S.C. § 2510 et seq. regulates electronic surveillance conducted without the consent of either party to a conversation, federal statutes impose no restrictions on recording a conversation with the consent of one of the conversants." *United States v. Caceres*, 440 U.S. 741, 750 (1979). The prohibition against interception does not apply when one of the parties to the communication has consented to such interception. United *States v. Willoughby*, 860 F.2d 15, 19 (2d Cir. 1988). *See Lewellen v. Raff*, 843 F.2d 1103, 1115 (8th Cir. 1988) (18 U.S.C. §§ 2510– 2520 was not violated because Mrs. Patterson, one of the parties to the conversations at issue, had consented to the interception).

40.      "'Party to the communication' under 18 USCS § 2511(2)(d) is defined as party who is present when oral communication is uttered and need not directly participate in conversation." *Pitts Sales, Inc. v. King World Prods.*, 383 F. Supp. 2d 1354, 1361 (S.D. Fla. 2005). In *Pitts Sales*, the court concluded that this interpretation was supported by two decisions—*Grandbouche v. Adams*, 529 F. Supp. 545, 548 (D. Colo. 1982) and *Brooks v. Am. Broad. Cos.*, 737 F. Supp. 431, 433 (N.D. Ohio 1990).

41.      In *Grandbouche*, an association's employee recorded oral communications uttered in her presence with a wireless microphone provided by federal agents. 529 F. Supp. 545. The defendants relied upon the consent exception under the anti-wiretap statute, § 2511(2)(c), to argue that their conduct did not violate the Fourth Amendment. The plaintiffs argued that the exception did not apply since the employee making the recordings was not a party to the intercepted communications given that the microphone picked up many conversations among employees in which the interceptor "although present . . . neither spoke nor was included as a silent participant." *Id*. at 548. The court disagreed and found the consent exception applicable. The court specifically

16

held that plaintiffs had relinquished any expectation of privacy by speaking in the presence of a third party, noting that "the simple fact remains that [the interceptor] could hear those conversations, and could listen attentively without indicating to the plaintiffs that she was doing so." *Id*.

42. In Brooks, the plaintiff had filed a claim under the wiretap statute for interception of an oral communication arising from a taped interview taken by a reporter. Plaintiff argued that the one-party consent exception did not apply because the interview was essentially a one-sided conversation and the one party doing all of the talking, the interceptor, should not be able to take advantage of the exception. *Id*. at 437. The Court found no case law or legislative authority to support this novel argument, stating that a requirement of meaningful participation by the nonconsenting party "would do more harm than good." *Id*. "Courts would be stalled trying to determine how much participation is necessary, and there would be serious vagueness problems with such a requirement." *Id.*

43. In *Pitts Sales*, 383 F. Supp. 2d at 1361–62, the court found the reasoning in Brooks persuasive and applicable, noting the problems that any other interpretation would create:

> If Defendant Yule's presence is not enough to make him a party to the communication, the Court would be stalled trying to determine the extent of Yule's participation, whether Yule spoke at any point during the communication, whether any of the oral communications were directed at Yule, whether a speaker made eye contact with Yule so as to include him in the conversation, etc. For example, in one of the excerpts played during the oral arguments, Plaintiff acknowledged that during certain portions of the excerpt, which took place in a hotel conference room, Yule had participated in the communication while in other segments he had not. Yet, Plaintiff argued that the one-party consent exception should not apply to those portions of the excerpt in which Yule was not spoken to or did not speak, leaving it up to the Court to determine at which point in the conversation Yule ceased being a party and at which point he regained his status as a party to the communication. The Court finds that accepting Plaintiff's interpretation of the statute would create practical problems not envisioned by the statute.

44.     Accordingly, the court entered summary judgment in favor of Defendant Yule on the wiretap claim under 18 U.S.C. §2511. *Id*. at 1362.

45.     Finally, in *United States v. Brown*, No. 10-100-BAJ-SCR, 2011 U.S. Dist. LEXIS 12932, at *9 (M.D. La. 2011), the court noted the court's holding in Pitts Sales that a "party to the communication" is defined as "a party who is present when an oral communication is uttered," and need not be a direct participant in the conversation. Therefore, the court found that the defendants' argument that the government agent or confidential source who intercepted the oral communications was not a 'party to the communication' is without merit. As determined by other federal district courts, a person whose presence is apparent in the midst of a communication is considered a party, whether or not that person actually participates verbally in the communication. *Id.*

46.     Therefore, if the interception or recording of the communications is made by a person who is present when the communications are made, there is no violation of the Wiretap Act, even if that person does not participate in the conversation.

47.     As shown above, under the express terms of Section 2511, Kelley has the burden to prove that:

    i. No party to the communications, including all those present, consented to the interception or recording;

    ii. The Defendants knew or had reason to know that the communications were intercepted or recorded without the consent of any of the parties or persons who were present; and

    iii. Defendants intentionally disclosed the contents of the communications to others.

48.     Kelley's Complaint also alleges that Defendants violated the Texas Wiretap Act, Tex. Civ. Prac. & Rem. Code. § 123.001 *et seq*., which, like the Federal Wiretap Act, requires

18

proof that none of the parties consented to the interception or recording of the conversation and that the defendant divulged information that he knew or reasonably should have known was obtained by interception of the communication that none of the parties consented to. See Tex. Civ. Prac. & Rem. Code. § 123.001 and § 123.002; *Jeanty v. Txfm, Inc.*, No. 4:19-CV-00366-ALM-CAN, 2020 U.S. Dist. LEXIS 180297, at *15 (E.D. Tex. 2020) ("the Texas Wiretap statute also provides such a 'consent' exception in the statutory definition of 'interception'"); *Stephens v. Dolcefino*, 126 S.W.3d 120, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (clarifying that the Texas Wiretap Act is not violated if at least one party to the communication consents to interception).

**b.     The Court should grant dismissal on the Federal and Texas Wiretap Act claim because there is an absence of evidence that none of the persons who were present during the communications consented to the recording.**

49.     Kelley's Complaint alleges that the communications at issue were intercepted by Chris Wyatt, who recorded oral phone communications between Kelley and Choudhri, and that Wyatt was not a participant. These phone communications were broadcast on Choudhri's speakerphone. Wyatt, at Choudhri's invitation, was present and recorded these communications with his cell phone.

50.     Wyatt's declaration that he was present with Choudhri when he recorded these communications proves the consent exception to 18 U.S.C. § 2511(2)(d). Therefore, there was no violation of the Wiretap Act. *See Pitts Sales*, 383 F. Supp. 2d at 1361– 62. In the face of Wyatt's unrebutted Declaration that he was present during the recording of the phone communications, Kelley, who has the burden of proof, cannot show a genuine issue of material fact regarding lack of consent. *See Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435, 436 (5th Cir. 2014) ("In the face of the unrebutted evidence submitted by Wells Fargo, Appellants failed to show a genuine issue of material fact . . ."); *Armstrong v. Marathon Petro. Co., LP*, No. 3:16-CV00115, 2018 U.S.

19

Dist. LEXIS 99127, at \*32–33 (S.D. Tex. 2018) ("No genuine issue of material fact exists as to pretext given the extensive and unrebutted evidence that Armstrong was terminated due to his performance issues"); *GlobeRanger Corp. v. Software AG*, No. 3:11-CV-403-B, 2014 U.S. Dist. LEXIS 141550, at \*1 (N.D. Tex. 2014) (Unrebutted summary judgment evidence shows no genuine dispute exists with respect to the derivative fraud theory).

51.    Additionally, Kelley has no proof that Wyatt was not present during the phone communications he recorded with his cell phone. In his response to a motion to dismiss in Civil Action No. 4:22-cv-2175, Kelley states that "Wyatt was deposed over that declaration . . . ." Cause No. 4:22-cv-2175, Doc. 24, ¶ 34. Conspicuously absent from Kelley's response is any assertion that Wyatt recanted his declaration that he was present with Choudhri when he recorded the communications.

52.    As discussed above, consent to the recording by anyone who is present is an exception to the Federal and Texas Wiretap Acts. Because there is an absence of evidence that Wyatt was not present when he recorded the speakerphone communications with his cell phone, the Defendants are entitled to dismissal on Kelley's claim under the Federal and Texas Wiretap Acts. See Haydel Enters., 783 F.3d at 536.

    **c.    The Court should grant dismissal on the Federal and Texas Wiretap Act claim because there is an absence of evidence that Sorrels knew or had reason to know that the recording of the phone communications violated the Wiretap Act.**

53.    As explained by the Tenth Circuit, the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c), requires proof that the defendant knew sufficient facts concerning the circumstances of the interception such that the defendant could determine that the interception was prohibited—specifically, that no party to the intercepted conversation had consented to the interception:

> Liability for intercepting or procuring another to intercept communications under subsections (a) and (b) of 2511(1) requires that a plaintiff prove intentional

20

conduct. However, liability under subsections (c) and (d) of 2511(1) for use and disclosure of information obtained from the contents of intercepted communications requires more. The use or disclosure must still be intentional, but in addition, a plaintiff must show that a defendant "know[s] or has reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." This language, found in each of subsections (c) and (d), compels the conclusion that, to establish liability under one of those sections, a plaintiff must demonstrate a greater degree of knowledge on the part of a defendant. The defendant must know 1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of Title III.

. . . For example, it is not enough to show that a defendant merely knew he was using or disclosing information from an intercepted communication. *It must also be shown that the defendant knew, inter alia, that neither party to the intercepted conversation had consented to the interception.*

*Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992) (emphasis added).

54.     Absent evidence that the defendant knew or had reason to know that the interception of the communication was illegal and not consented to, there is no violation of the Wiretap Act. For example, in *McCann v. Iroquois Memorial Hosp.*, 622 F.3d 745 (7th Cir. 2010), Valerie McCann and Dr. Leslie Lindberg had a conversation in which they criticized hospital administration. Unbeknownst to them, their conversation was recorded by a dictation machine, transcribed, and handed to those they criticized. Lindberg and McCann sued the hospital's CEO, Leurck, for violating the Wiretap Act by disclosing the recording to the Hospital's board of trustees. *Id.* at 749. The Seventh Circuit recognized that:

To be liable under § 2511(1)(c) or § 2511(1)(d), a defendant must know or have reason to know "'sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of [the Wiretap Act].'" (citations omitted). It is not enough to know that the conversation was intercepted; the defendant must also be able to tell that none of the statutory exceptions apply. (citations omitted). If the defendant does know the interception was illegal, then he is liable if he "uses" or "discloses" to others the contents of the recorded conversation. 18 U.S.C. §§ 2511(1)(c), (d), 2520. *McCann*, 622 F.3d at 753.

21

55.     The Seventh Circuit affirmed the summary judgment in favor of Leurck because "Leurck testified that Freed told him that the recording was made because Lindberg forgot to turn off his dictation machine (again), and if that is all Leurck knew, then he had no reason to think that the recording violated the statute, which does not cover inadvertent interceptions." *Id*. The plaintiffs argued that the letter that their counsel sent to Leurck accusing Leurck of illegally intercepting the conversation gave Leurck a reason to know that the recording was illegal. *Id*. at 754. The Seventh Circuit rejected this argument: "But the letter provides only a bald allegation and no concrete facts, let alone facts that Leurck was required to believe, to undermine his belief that the recording was made accidentally. *See Nix*, 160 F.3d at 349–50." *Id*.

56.     There is no affirmative duty to investigate or conclusively ascertain the legality of an interception where the information available tended to show that one of the parties to the intercepted conversation was the one who actually made the recording. *Boswell v. Fisher*, No. 05-80781-CIV, 2006 U.S. Dist. LEXIS 115208, at *18 (S.D. Fla. 2006). In Boswell, the court granted summary judgment against Boswell's claim against Fisher for violation of 18 U.S.C. § 2511(1)(d) because the evidence was insufficient to create an issue of fact as to whether Fisher had reason to know the recordings were unlawful when he used them. *Id*. at *15. "The information available to Fisher was that Boswell himself had made the recordings and had therefore consented to them. Having that understanding, there would have been no need for Fisher to make further inquiry." *Id*. at *19.

57.     "[A]n attorney's professional duties may be a factor in determining whether there is reason to know that recorded information, given by the client, was illegally obtained. Although an attorney must not turn a blind eye to the obvious, he should be able to give his clients the benefit of the doubt." *United States v. Wuliger*, 981 F.2d 1497, 1505 (6th Cir. 1992). Therefore, Sorrels

was entitled to rely on Wyatt's declaration that he was present with Choudhri when he recorded the phone conversations. Sorrels had no duty to investigate any further. *See Boswell.*

58.     To establish a violation of the Wiretap Act, Kelley has the burden to prove that Defendants knew or had reason to know when Ramey allegedly disclosed Wyatt's recordings of the communications to other persons that Choudhri did not consent to their recording and that Wyatt was not present with Choudhri when Wyatt recorded them. *See Pitts Sales*, 383 F. Supp. 2d at 1361–62. The Defendants are entitled to dismissal on the Wiretap Act claim because there is no such proof. There is no evidence that Defendants through Ramey, before he used or disclosed the recordings, was aware of any evidence that contradicted Wyatt's declaration that he was present with Choudhri when he recorded the phone communications. Because there is an absence of evidence of this essential element—that the Defendants knew or had reason to know that the recordings violated the Federal and Texas Wiretap Acts, Defendants are entitled to dismissal of Kelley's claims under the Acts. *See Haydel Enters.*, 783 F.3d at 536.

59.     Accordingly, conclusive evidence proves that the Defendants, before Ramey used or disclosed the communications, did not know or have reason to know that the communications were recorded without the consent of any persons who were present during the communication. Rather, all the evidence available to the Defendants indicated that Choudhri consented to the recording and Wyatt was present with Choudhri when Wyatt recorded the communications. Therefore, the Court should dismiss Kelley's claim under the Federal and Texas Wiretap Acts because Defendants has presented conclusive evidence disproving the knowledge element of that claim and there is an absence of evidence proving it. *Celotex*, 477 U.S. at 322–23.

23

**d.    All State Law Claims Are Barred By Immunity, Limitations, Lack of Proof, Or Are Untenable as Plead.**

i.    Defendants have immunity as to all of Plaintiff's state law claims.

60.    "Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 485 n.12 (Tex. 2015). The privilege also prohibits "any tort litigation based on the content of the communication." *Collins v. Zolnier*, No. 09-17-00418-CV, WL 2292333, at *3 (Tex. App.—Beaumont 2019, pet. denied). The judicial proceedings privilege is absolute and covers "any statement made by…counsel…, and attaches to all aspects of the proceedings, including statements made in open court, pretrial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James*, 637 S.W.2d at 916–17. The privilege promotes "full and free disclosure of information...by participants in judicial proceedings." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015); *see also Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994) ("[T]he administration of justice requires full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits."). The only use Defendants made of the recordings was filing them as evidence in their related lawsuits. This use is protected even if they had been obtained illegally. Plaintiff knows this, he wanted to sue Movants years ago, but stated in April of 2021 that:

> Kelley: "*I invite him (Ramey as counsel for Steadfast)… walk out of privilege (against being sued for filing the audiotapes)….the reason I can't sue him… is, The law in Texas is clear. He's protected… I know at least four sets of lawyers that have been severely sanctioned …for suing other lawyers.*"

61.    Attorney immunity is a "comprehensive affirmative defense protecting attorneys from liability to non-clients." *Cantey Hanger*, 467 S.W.3d at 481. "[A]ttorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Id*. Attorney immunity is "intended to ensure

24

'loyal, faithful, and aggressive representation by attorneys employed as advocates.'" *Id*. Conduct by an attorney "is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." Id. (quoting *Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App.-Dallas 2003, no pet.)). The filing of pleadings and evidence and motions in Court or in other proceedings is always absolutely privileged by complete immunity from suit. *Id; Rogers v. Cassidy*, 946 S.W.2d 439 (Tex. App.— Corpus Christi 1997) (disapproved of on other grounds by *Huckabee v. Time Warner Entertainment Co. L.P.,* 19 S.W.3d 413 (Tex. 2000)); *Thomas v. Bracey*, 940 S.W.2d 340 (Tex. App.— San Antonio 1997); *Darrah v. Hinds*, 720 S.W.2d 689 (Tex. App.—Fort Worth 1986), writ refused n.r.e.; *Zarate v. Cortinas*, 553 S.W.2d 652 (Tex. Civ. App.—Corpus Christi 1977). Even otherwise wrongful conduct by an attorney "is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." *Id*. (quoting *Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App.—Dallas 2003, no pet.)). Attorneys are shielded from liability to non-clients for their actions when those actions "qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)); *Sullo v. Kubosh*, 616 S.W.3d 869, 896 (Tex. App. 2020), *reh'g denied* (Dec. 31, 2020). Movants have absolute immunity from Plaintiff's suit as to all state claims. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346-47 (5th Cir. 2016).

### e. Limitations and Laches Apply to Plaintiff's State Law and Wiretap Act Claims.

62.     Plaintiff's causes of action under the Texas Wiretap Act and Defamation have expired. Wyatt's recordings took place in January, February and April of 2020. Exhibits B(1), (2), (3). Plaintiff failed to file his claims until July of 2022, after the two-year limitations period for any claim arising under the Wiretap Act, and after the one year limitations period for defamation expired.

**f. Defamation and Tortious Interference are Untenable Due to Plaintiff's Failure to Show Proof of the Necessary Element of Damages.**

63.     Plaintiff judicially admits he doesn't have damages. See Transcript of Hearing, DKT. 59, pg.28,56. Further, Plaintiff's claims for damages from Tortious Interference and Defamation are patently untenable on the face of the pleadings. Plaintiff purports to have a contingent attorney's fee agreement with Alvarez, and claims tortious interference by Defendants with that agreement, on a case which he lost for Alvarez (2016-64847). Since Alvarez lost on a contingent fee basis, Kelley can obviously never incur damages arising from interference. Finally, Alvarez confirmed, under oath (without any Steadfast party even being present), that Defendants never spoke to him or influenced him:

> Exhibit 272. **Pg. 258** *Kelley: Did you think there was an understanding between your side and the Steadfast Group that if you cooperated with them and tried to help them in their lawsuits, uh, in the federal cases, that -- that y'all had an understanding they would not try to collect on the $9 million judgment?  Was that your understanding?* **20  Alvarez.    No.  Because, I mean, I have never talked to Chris Ramey. Pg. 259** *14  But did you think your lawyer had entered into an agreement with Ramey, such that his side would not collect against you if he got this kind of cooperation from you?* **A.    No.  263** *So was there an understanding that, if you help them, they would, you know, give you an opportunity to try to make the money back by buying the property or match a property? Is there anything that you might done to help them as a sort of quid pro quo: I'm helping you and maybe later on you'll help me get my money back? Was that your understanding?* **A.    No."**

64.     Further, Kelley was present when Alvarez' attorney confirmed in court in April of 2021, after the filing of the Alvarez whistleblower evidence, that:

> "*there has never been an oral or written agreement between D&A Alvarez Group, LLC and David Alvarez as an individual with Mr. Ramey.*"

**g. Conspiracy and Aiding and Abetting Likewise Fail Due to Lack of an Underlying Tort; Thus, Dismissal is Warranted.**

65.     "Aiding and abetting and conspiracy are theories of derivative or vicarious liability." *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738 (Tex. 2020). "These liability-spreading

26

theories depend upon liability for an underlying tort, and they survive or fail alongside that tort."

Id. Defendants reassert that all claims lack jurisdiction and all claims lack merit. Because there

isn't an underlying tort that Defendants could be liable for, Plaintiff's claims for conspiracy and

aiding and abetting must be dismissed.

### h. Plaintiff has Waived all Claims, Judicially Admitted Legality of His Tapes, and is Judicially Estopped, Having Litigated this Issue Numerous Times Without Objection as to the Illegality of the Tapes in Response to Movants' Offerings as Evidence in Dispositive Pleadings.

66.     The doctrine of judicial admissions precludes a litigant from asserting a position

that is inconsistent with a position that the litigant or its privy asserted in a prior testimony,

pleading, legal argument, or brief which has received judicial acceptance. *Id*. The litigant need not

have been a litigant to the prior proceeding. *See Federal Deposit Ins. Corp. v. Mmahat*, 907 F.2d

546 at 553 (5th Cir. 1990); *Am. Sav. & Loan v. Misick*, 531 S.W.2d 581 (Tex. 1982). 31 C.J.S.

Estoppel §117 at 626; *Transamerica Ins. Co v. Johnson Service Co.*, No. 73-1108 (5th Cir.)

(quoting *Long v. Knox*, 291 S.W.2d 292, 295.

65.     A judicial admission results when a litigant fails properly to deny another litigant's

allegation. 31A C.J.S. Evidence § 381(c)); *see Schott Motorcycle Supply, Inc. v. American Honda

Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992); *Missouri Housing Dev. Comm'n v. Brice*, 919

F.2d 1306, 1315 (8th Cir. 1990); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097-99 (10th Cir.

1991); *E-Tex Dairy Queen, Inc. v. Adair*, 566 S.W.2d 37, 39 (Tex. 1978); 31A C.J.S. Evidence §

381(d); *Deputron v. Young*, 134 U.S. 241 (1890). A party's failure to respond to a communication

is admissible whenever "the party would under all circumstances naturally be expected" to

respond. *See* Graham, Federal Practice and Procedure, Evidence § 6721 at 497-98 (1992) (citing

McCormick, Evidence § 262 at 177-78 (4th ed. 1992)). Kelley failed to controvert the legality of

Wyatt's tapes in any of the prior litigated cases since they were filed in dispositive pleadings in July of 2021, and has judicially admitted their legality.

### i. Kelley Did Not Serve Defendants Timely Under FRCP4(M) Requiring Dismissal Of His Claims

66. FRCP 4(m) provides that: "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action." Kelley did not request summons for 105 days, and did not even purportedly serve Zupanc until 159 days after filing his Complaint. Plaintiff did not seek leave or demonstrate good cause for delay, was involved in active litigation with Movants, and knew exactly how to find them.

### PRAYER FOR RELIEF

WHEREFORE, Defendants, Ringo Lanzetti, Richard Metler, Riley Uglum, Dale Pilgeram, Stephen Zupanc and Edwin A. Mead prays that the Court grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint and further grant Defendants any such other and further relief at law or in equity to which they may be justly entitled.

Respectfully Submitted,

**McCathern Houston**

By: /s/ *Rodney L. Drinnon*
**Rodney L. Drinnon**
Texas Bar No. 24047841
Southern District No. 6059446
rdrinnon@mccathernlaw.com
**David Clark**
Texas Bar No. 24036367
Southern District No. 613938
dclark@mccathernlaw.com
**Danielle Chester**
Texas Bar No. 24101615
Southern District No. 3015382
dchester@mccathernlaw.com

28

Houfilings@mccathernlaw.com
2000 West Loop South, Suite 1850
Houston, TX 77027
Tel. (832) 533-8689
Fax (832) 213-4842
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of August 2025, a true, correct, and complete copy of the above and foregoing instrument, was served in accordance with the Federal Rules of Civil Procedure, on all counsel of record.

/s/*Rodney L. Drinnon*
Rodney L. Drinnon

29