United States District Court
Southern District of Texas
**ENTERED**
September 25, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LLOYD E. KELLEY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-2168 |
| | § | |
| RINGO LANZETTI, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lloyd E. Kelley, a Texas attorney proceeding *pro se*, filed this lawsuit against defendants Richard R. Metler, Ringo Lanzetti, Riley Uglum, Dale Pilgeram, Stephen K. Zupanc, and Edwin A. Mead. He raises claims for enforcement of the federal Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510–2521, the Texas Wiretap Act ("TWA"), TEX. CIV. PRAC. & REM. CODE § 123.002 *et seq.* (civil enforcement of Texas Penal Code § 16.02), tortious interference, defamation, and civil conspiracy. He seeks damages, a declaratory judgment, and injunctive relief.

### I. 28 U.S.C. § 1367

Plaintiff pleads federal question jurisdiction under 28 U.S.C. § 1331 as to his claims for enforcement of the ECPA. He pleads supplemental jurisdiction under 28 U.S.C. § 1367 as to his state law claims for violation of the TWA, tortious interference, defamation, and civil conspiracy.

Section 1367, "Supplemental Jurisdiction," provides as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction *over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a), emphasis added. Notwithstanding the above, § 1367(c) allows a court to decline to exercise supplemental jurisdiction over a state law claim under subsection (a) if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c).

In pleading his ECPA claims – the claims over which this Court has original jurisdiction – and his TWA claims, plaintiff alleges as follows:

> 7.  Plaintiff represents clients including Jetall Companies, 2017 Yale Development, LLC and Ali Choudhri ("Clients"). A former employee of Plaintiff's Clients, Chris Wyatt, stole corporate files including electronic communications and admitted he secretly recorded oral phone communications between Plaintiff, a lawyer, and his client, Ali Choudhri. Defendants, through their agent Christopher Ramey, engaged in a conspiracy with Randal Sorrels and Timothy Trickey to obtain, use and distribute the unlawfully intercepted communications by aiding Chris Wyatt. Defendants and their agents Chris Ramey and Rodney Drinnon repeatedly used the unlawful interception of attorney-client communications and published them in the federal filing system. Defendants and their agents Chris Ramey and Rodney Drinnon never filed them under seal and never filed anything with the Court to obtain a ruling on the use of the tapes.
>
> 8.  Defendants through their agents Chris Ramey and Rodney Drinnon used the unlawfully obtained recordings and tried to "launder" them by filing them in court proceedings in total disregard to the ethical obligations regarding privileged communications.

> 9. Defendants and their agents acted with careless disregard of the fact these tapes were already subject to litigation. Ali Choudhri sued Chris Wyatt and obtained a restraining order regarding the confidential company information Wyatt take. It is now established that Chris Ramey was fully aware of the restraining order and were aware that Chris Wyatt was a former employee of Clients and that Chris Wyatt was not a participant on any of the conversations. Further, Defendants' lawyers knew that Clients had denied any consent to record said conversations. Defendants' lawyers knew Plaintiff was the lawyer for Clients. engaged in years of litigation with Plaintiff as the lawyer representing Clients.
>
> 10. It was a violation of federal and state law for anyone [*sic*] Wyatt to record and then disseminate the phone conversations between Plaintiff and his Clients. Under state law, the penalty is a felony.
>
> 11. Defendants through their agents Chris Ramey and Rodney Drinnon have repeatedly disclosed or attempted to disclose to other persons the contents of an illegally obtained wire, oral, or electronic communication. Such acts violate the federal and state law. The Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521 prohibits the intentionally disclosing or attempting to disclose to another person the contents of an illegally obtained wire, oral, or electronic communication.
>
> 12. Texas provides for civil relief under Texas Civ. Prac. & Rem. Code § 123.002 *et seq.* (civil enforcement of Texas Penal Code § 16.02). Plaintiff seeks all the remedies provided for under state and federal law to stop Defendants and their agents from using and disseminating the unlawfully intercepted communications. Unless Defendants and their agents are restrained, they will continue to violate the law.

(Docket Entry No. 45.)

In pleading his state law claims against the defendants for tortious interference, plaintiff alleges as follows:

> 16. Pleading additionally, or in the alternative, to recover for tortious interference with an existing contract, Plaintiff had existing contract with Alvarez constituting a valid contract subject to interference; (2) Defendants committed willful and intentional acts of interference, including deliberately

3

inducing Alvarez to breach that contract; (3) these acts and others were the proximate cause of the Plaintiff's damages; and (4) that actual damage or loss occurred.

17. In the instant case, Defendants willfully and intentionally interfered with valid contracts between Plaintiff and David Alvarez and D&A Alvarez Group, LLC (hereinafter "Alvarez") through their agents Chris Ramey and Scott Breitenwischer. While Plaintiff represented Alvarez, Defendants' agents tortiously interfered with the attorney fee agreement Plaintiff had with Alvarez. Defendants caused Alvarez to breach that agreement and to secretly be directed by Ramey while he employed Plaintiff. As a result, Alvarez did not appeal and instead began to take bizarre actions such as begging to be sued individually for torts or confessing to crimes as alleged by Ramey. Defendants forced Alvarez to sign a false confession in which Alvarez admits to criminal acts as drafted by Chris Ramey the agent of Defendants.

18. Upon information and belief, Defendants through their agents bribed Alvarez's other lawyer, Tim Trickey, who was allowed to take proceeds of money that Defendants and their agents were denying ever existed. In return Trickey and Ramey entered into a conspiracy to work behind Plaintiff's back while Plaintiff was encouraged to continue working as Alvarez's lawyer.

19. Defendants' acts through their agents made performance impossible or more burdensome, difficult or expensive, which was the proximate cause of Plaintiff's actual damages and loss. They also interfered with Plaintiff's representation of his client. Alvarez during cross-examination admitted the declaration Chris Ramey drafted for him to sign contained false facts. Alvarez recanted that declaration. However, Defendants and their agents Chris Ramey and Rodney Drinnon continue to use the false Alvarez declaration knowing it is perjury.

(Docket Entry No. 45.)

It is clear to the Court that plaintiff's state law claims for tortious interference are not so related to his ECPA claims that they form part of the same case or controversy. To the contrary, plaintiff's ECPA claims and tortious interference claims are factually and legally

unrelated. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for tortious interference.

Further, in pleading his claims against the defendants for defamation, plaintiff alleges as follows:

> 21. Defendants individually and through their agents Chris Ramey and Rodney Drinnon published false statements about Plaintiff (ii) [*sic*] that was defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.
>
> 22. Defendants through their agents published false statements about Plaintiff (ii) [*sic*] that was [*sic*] defamatory (iii) while acting with either actual malice, or negligence, regarding the truth of the statement.
>
> 23. Richard R. Metler and Ringo Lanzetti both lied under oath claiming that Plaintiff had abused them in a deposition in Texas. The truth was that Metler and Lanzetti were never deposed by Plaintiff. Plaintiff had never even met Metler and Lanzetti. Such false accusations of fact were used to seek prosecution of Plaintiff.
>
> 24. Defendants and their agents published the false statements that Plaintiff "personally causing 2017 Yale's defaults on Steadfast's loans and everything that has happened since. All claims and defenses of these sham entities in all of these cases were predicated upon this fraud. This conduct is a fraud on all of these Courts, . . . that Mrs. Fraga, and likely other attorneys, may have wrongfully accepted percentage interests in 2017 Yale or the trust, to induce their work for Plaintiff in a "fraudulent enterprise."
>
> 25. Defendants accused Plaintiff of being involved in a "fraudulent enterprise."
>
> 26. Defendants accused Plaintiff of criminal conduct and of engaging in conduct constituting a felony.
>
> 27. Defendants [*sic*] agent Chris Ramey spoke to Wayne Dolcefino and made similar accusations on behalf of Defendants which included aiding Dolcefino's slander-for-hire blogs.

28. Defendants defamed Kelley by innuendo. Defendants accused Plaintiff of being a "pretend" lawyer and making false statements to courts.

29. Defendants accused Plaintiff of committing fraud by causing them to individually enter into the April 4, 2017 transaction. Defendants and their agents knew Plaintiff was not involved in the April 4, 2017 transaction at all.

30. Defendants and their agents Chris Ramey knew Plaintiff had nothing to do with the April 4, 2017 transaction. Defendants knew Plaintiff never spoke to Defendants agents Marc Sherrin, Matt Aycock or any of Defendants other agents before the April 4, 2017 transaction upon which any of them could base a fraud claim.

31. Defendants accused Plaintiff of a fraudulent transfer of assets they assert was there property. Defendants were fully aware that they collectively sold their April 4, 2017 Note and Deed of Trust in January 2018 to Alvarez. Defendants and their agents were fully aware that after January 2018, they attached an "allonge" to the Note they had with Alvarez having the effect of discharging that Note such that they had nothing to enforce.

32. Defendants understood what they were doing when on January 30, 2018, they sold their "collateral" to D&A Alvarez Group, LLC. The "collateral" they are referring to in their false statements regarding Plaintiff is the April 4th 2017 Note and Deed of Trust to 2017 Yale. The January 31, 2018 transaction documents were long and detailed. Having read the documents thoroughly, Defendants claim they understood them and had counsel when they elected to sell their "collateral" to D&A Alvarez Group company. They elected not get a personal guarantee from Mr. Alvarez. Defendants elected to finance Mr. Alvarez's purchase of the "collateral" by loaning D&A Alvarez Group, LLC the purchase price. Mr. Alvarez through his company thus owned the "collateral." Defendants did not own the "collateral" after January 31, 2018. Defendants' only "collateral" after January 31, 2018 was in UCC Chapter 9 security interest in the underlying instruments themselves. Defendants did not have a Deed of Trust ruing to the property. The original Note and Deed of Trust were sold to D&A Alvarez Group, LLC as of January 31, 2018. Thus, as of January 31, 2018, Defendants did not have any collateral in the "property" located at 829 Yale. Their security, as it states on their transaction documents, says their security is in commercial paper. It is

undisputed that Defendants never foreclosed on their security interest in the underlying commercial paper.

33. Then, Defendants executed an Allonge and attached it to the D&A Alvarez Group Note which had the legal effect of endorsing that note back to its maker, D&A Alvarez Group. Surely Defendants knew what an "Allonge" is and its effect as they were represented by numerous lawyers. Defendants obtained a judgment that the January 31, 2018 "Loan Documents" as they call them are valid and enforceable. As such, there is nothing to set them aside. Defendants obtained a breach of the January 31, 2019 agreement against D&A Alvarez Group, LLC and getting a "money judgment" for $9 million against D&A Alvarez Group, LLC.

34. Defendants were made aware by record filings that in July 2018, as owner of the April 4, 2017 Note and Deed of Trust, D&A Alvarez Group entered into a Rule 11 Settlement Agreement with the parties suing him and released all such obligations.

35. Despite these facts, Defendants made sworn statements that they have personal knowledge of the matters they were factually asserting such as their claim of fraud or fraudulent transfer and yet none of them spoke to Plaintiff outside a taped deposition. Two Defendants falsely swore they were deposed and abused by Plaintiff when they had never been deposed at all. Such allegations were at the prompting of their agent Chris Ramey. Ramey and the Defendants knew they had never been in Plaintiff's presence at any time yet they lied under oath. It is impossible for Plaintiff to have made any representations to any of the Defendants in April 2017 yet each of the Defendants made the same false assertion of fact calling Plaintiff a fraudster and asserting Plaintiff had committed numerous crimes.

36. Defendants' statements and the statements of their agents included false statements and false innuendo which were defamatory.

37. Defendants and their agents were fully aware that Alvarez released the April 4, 2017 Note and Deed of Trust in July 2018. Alvarez and others entered into a Settlement Agreement which was filed with the 190th District Court. Not only were Defendants and their agents put on notice the April 4, 2017 lien had been released, Defendants and their agents used the Settlement Agreement in a motion for summary judgment seeking to have the Court dismiss the claims on the basis that the Agreement benefited them by releasing all claims.

> Defendants filed a summary judgment, MSJ #5, making a claim that very Settlement Agreement provided Defendants a release as well.
>
> 38. In July 2019, a year after Mr. Alvarez executed the Settlement Agreement, Mr. Alvarez executed and had filed a recordable release of lien as to the Property.
>
> 39. As such, Defendants as sophisticated real estate investors knew that after January 30, 2018, there was no "collateral" for Defendants to claim as to any real property associated with 829 Yale. Defendants knew after July 2018, there were no liens on the property associated with any deed of trust. After July 2019, the Alvarez release was public record. None of this was fraudulent. Despite this knowledge, Defendants made defamatory statements about Plaintiff being a crook or a thief to others by use of electronic communications.
>
> 40. All of Defendants' claims of fraud and fraudulent transfer were dismissed with prejudice by the October 2019 judgment. Despite this fact, Defendants continue to disparage Plaintiff and accused Plaintiff of theft and criminal fraud and fraudulent transfer.
>
> 41. Defendants make false claims that Plaintiff lied to a court under oath. Said statements were made knowing they were false or with a reckless disregard for the truth. Defendants were never in the court room and had no personal knowledge of any of the proceedings. The transcript record reveals that Defendants' agent, Mr. Ramey, is the one that lied to the Court when he falsely told Judge Miller that Plaintiff violated a temporary injunction. When the Court examined the order, it determined no violation had occurred and never proceeded with any hearing. In a subsequent hearing, the 190th Court has admonished Defendants' agent Mr. Ramey about making such misstatements about the proceedings. Defendants continue to falsely state what is objective on the record thereby defaming Plaintiff.

(Docket Entry No. 45.)

Again, it is clear to the Court that plaintiff's state law claims for defamation are not so related to his ECPA claims that they form part of the same case or controversy. To the contrary, plaintiff's ECPA claims and defamation claims are factually and legally unrelated.

Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for defamation.

Further, in pleading his claims against the defendants for civil conspiracy, plaintiff alleges as follows:

> 43. Pleading additionally, or in the alternative, Plaintiff would show that each Defendant was a member of a combination of two or more persons, the object of which was to accomplish an unlawful purpose, or a lawful purpose by unlawful means, the members had a meeting of the minds on the object or course of action, one of the members committed an unlawful, overt act to further the object or course of action, and the Plaintiff suffered injury as a proximate result of the wrongful act.

(Docket Entry No. 45.)

To the extent plaintiff is raising a civil conspiracy claim as to his state law claims for tortious interference and/or defamation, the Court has declined to exercise supplemental jurisdiction over the tortious interference and defamation claims. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's civil conspiracy claims against the defendants arising from the alleged tortious interference or defamation.

In the alternative, even assuming plaintiff's state law claims could be seen as so related to his ECPA claims that they form part of the same case or controversy, plaintiff's state law claims substantially predominate over his ECPA claims. Consequently, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). *See Garcia v. City of McAllen*, 853 F. App'x 918, 920 (5th Cir. 2021).

For these reasons, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims). Plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims) are **DISMISSED WITHOUT PREJUDICE**.[1]

The Court **RETAINS** supplemental jurisdiction as to plaintiff's claims arising under the TWA and any civil conspiracy claims arising from such claims, as such claims are so related to plaintiff's ECPA claims that they form part of the same case or controversy.

## II. CONCLUSION

For the above reasons, plaintiff's state law claims for tortious interference, defamation, and civil conspiracy (as relates to the tortious interference and defamation claims) are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**THIS IS AN INTERLOCUTORY ORDER.**

Signed at Houston, Texas, on this the 24 day of September, 2025.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[1] Under 28 U.S.C. § 1367(d), "limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."