UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LLOYD KELLEY,<br>Plaintiff,<br><br>v<br>RINGO LANZETTI, RICHARD METLER, RILEY UGLUM, DALE PILGERAM, STEOHEN ZUPANC, & EDWIN A. MEAD<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:22-cv-02168 |

**PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANTS' COMBINED EXPEDITED REPLY [DOCKET ENTRY 56]**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

COME NOW Plaintiff's Response to [Docket Entry 56] Defendants' Counsel's Reply to the Court's Order at Docket Entry 55 (hereinafter the "Reply") and would respectfully show the Court as follows:

## I. Counsel Failed to Address the Key Issue of When Pilgeram Died

Counsel Rodeny Drinnon failed to address the key issue; when did Dale Pilgeram die. Upon information and belief, this omission of that key fact was not an oversight. Mr. Drinnon admits Mr. Pilgeram was deceased before he was substituted as counsel of record for Chris Ramey. Mr. Drinnon stated in his Reply, D.E. 56 that

"Shortly thereafter, and without McCathern Houston's knowledge or consent, Chris Ramey filed a Motion to Substitute Attorney Rodney Drinnon [McCathern Houston] [Dkt. No. 41]." See D.E. 56 para. 5. However, Mr. Drinnon did not disclose the date of Mr. Pilegram's death.

## II. Counsel Failed to Address the Key Issue of His Authority to Continue to Represent a Dead Person

Mr. Drinnon's Reply seems to imply to the Court that everything is now fine because he verbally contacted Mr. Pilgeram's daughter and she has agreed to something. Under the heading, "Mc Cathern Has Confirmed Its Representation." That is a frivolous statement without any meaning.

First, Mr. Drinnon states, McCathern Houston was unable to obtain her written authorization, but can supplement if the Court deems it necessary." Mr. Drinnon did not identify any "capacity" upon which Mr. Pilgeram's daughter could make any agreement for Mr. Pilgeram's estate. Mr. Drinnon does not identify any probate case or proceeding anywhere. Plaintiff spent a considerable amount of time trying to locate a probate proceeding and was unable to find one in the local where Mr. Pilgeram lived.

Mr. Drinnon did not identify any capacity for Mr. Pilgeram's daughter to make any agreement for his estate; such as she has been appointed an executor of his estate in a pending probate proceeding.

All of this information is necessary because the rules require the substitution of Mr. Pilgeram's estate for Mr. Pilgeram. It is unclear if Mr. Pilgeram's daughter is even aware of the ramifications of allowing Pilegram's estate to be substituted in as a party at this late date because it seems unlikely the probate matter remains open. It is also not legally possible for anyone to agree to have Mr. Drinnon continue to represent someone who is deceased. As such, Mr. Drinnon's response dodged the issues that would be necessary to obtain resolution of this matter.

Despite this issue raised and the Court requesting a response, Defendants' counsel still has not filed with the Court a suggestion of death. Once a client dies, the attorney is no longer authorized to file motions, respond to discovery, or otherwise act in litigation, unless and until they are retained by the decedent's successor, such as an estate representative or successor in interest. Any further action without such authority is not only unauthorized but may also mislead the court and opposing counsel as to a material fact. Namely, that the client is still alive, and the attorney continues to act with authority.

Mr. Drinnon adds to the absurdity by saying that "Steadfast Lenders'former designated representative, Marc Sherrin" somehow "confirmed" his continued representation. Again, there is no showing of an legal authority for Mr. Sherrin to agree to Mr. Drinnon representing a deceased person. Mr. Sherrin apparently did not even have a power of attorney to engage anyone for Mr. Pilgeram to represent

him in this case when he was alive and certainly could not have any such power after he was deceased.

### III. Counsel's Inadequate and Misleading Response Will Cause Further Delay

Mr. Drinnon's misleading response does not help in getting this case resolved or tried. Over a year ago, as the exhibits attached hereto prove, Plaintiff repeatedly offer a very generous resolution of this matter on the record before this Court and the prior Court it was originally assigned. A year ago, Plaintiff put in writing a generous resolution/settlement offer to Mr. Drinnon on behalf of Mr. Pilgeram and all Defendants. See Exhibit A, attached. Mr. Drinnon never responded. Plaintiff then followed up and again asked if Mr. Drinnon's clients would accept the offer of settlement. Mr. Drinnon responded that he was waiting to hear back from his clients. It is clear that Mr. Drinnon never communicated any such offer to Mr. Pilgeram because Mr. Pilgeram was deceased. The settlement offer expressly stated each Defendant was free to accept the offer or reject and that not all had to accept. Yet, Mr. Drinnon never responded. Mr. Drinnon gambled that the Court would grant his motion and he would then seek fees to further his personal interest.

However, in Texas, litigation is not supposed to be for the lawyers personal benefit. In Texas, lawyers are ethically required to promptly communicate all settlement offers and/or material developments to clients, as the authority to accept

or reject a settlement rests solely with the client. See Texas Ethics Rule 1.02 and 1.03. ( “a lawyer is obligated to communicate any settlement offer to the client in a civil case,” Rule 1.02 fn 2, and “[a] lawyer should consult with the client concerning any such proposal, and generally it is for the client to decide whether or not to accept it.” Rule 1.02 fn. 3). Failing to disclose settlement offers or to consult with a client concerning any such proposal is a serious breach of professional responsibility. Mr. Drinnon violated the Professional Rules by representing Mr. Pilgram when he had never been authorized to represent him, Mr. Drinnon never spoke to him to get his approval, Mr. Drinnon never even communicated with him for two plus years. More egregious, Mr. Drinnon did not communicate a written and a verbal settlement offer to his client for almost two years. Instead, Mr. Drinnon responded he was waiting on a response which was false.

Even with the information supplied in Mr. Drinnon’s Reply, D.E. 56, Mr. Pilgeram has been dead for over two years. This means that Mr. Drinnon has never had communication with his client except to inform him last year, on May 14, 2025, that he and his firm had to withdraw from representing all of the Defendants because Mr. Drinnon and his firm had initiated arbitration against them and their holding company 829 Yale Holdings, Inc. for non-payment of fees. See Exhibit Mr. Drinnon attached to Reply. Mr. Drinnon asked Mr. Pilgeram if he was opposed to his filing of a motion to withdraw. Mr. Drinnon admits Mr. Pilgeram never responded to this

letter informing him of his withdraw. By instituting arbitration against the Defendants company, a conflict would have immediately existed which would preclude Mr. Drinnon from having direct contact with Mr. Pilgram and it would be an ethical conflict for Mr. Drinnon to represent him while at the same time suing them.

Given Mr. Drinnon's admission that Mr. Pilgeram never authorized his representation and never agreed to any fee arrangement, Mr. Drinnon never had the authority to file any matter in this case representing Mr. Pilgeram. In Texas, "Barratry is the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 n.2 (Tex. 1994); *Nguyen v. Watts*, 605 S.W.3d 761, 773 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). "**Barratry"** is the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 n.2 (Tex. 1994). Barratry by solicitation has been unlawful in Texas since 1901, when the penal code was amended to outlaw 'the fomenting of litigation by attorneys at law by soliciting employment.' " *State v. Mays*, 967 S.W.2d 404, 408–09 (Tex. Crim. App. 1998) (quoting *McCloskey v. San Antonio Traction Co.*, 192 S.W. 1116, 1119 (Tex. Civ. App.—San Antonio 1917, writ ref'd)).

Not only did Mr. Drinnon's firm bring an arbitration claim against Mr. Pilgeram's company related to the same litigation, Mr. Drinnon's co-counsel, Chris Ramey, sued Mr. Pilgeram in state court individually. Mr. Ramey specifically told the Court that "all Defendants," which included Mr. Pilgeram, "consented to the substitution" of Mr. Drinnon for Chris Ramey. Mr. Drinnon never checked this important fact himself to confirm any such approval.

Instead, Mr. Drinnon attaches as an exhibit a letter he wrote to all the Defendants including Mr. Pilgeram dated May 14, 2025. That letter states that Mr. Drinnon and his firm had to withdraw from representing Mr. Pilgram because Mr. Drinnon and his firm had initiated arbitration against Pilgeram's holding company, 829 Yale Holdings, Inc., in which Mr. Pilgeram was a shareholder. Texas Ethics Rule 1.7 prohibits such conduct. Mr. Drinnon tells him in the letter he is filing a motion to withdraw from representing him and asked if he was opposed or unopposed to the motion. It would be unethical for Mr. Drinnon to contact Mr. Pilgeram after his firm-initiated arbitration. See Ethics Rule 1.09 and 4.04(a) and *The Restatement of the Law Governing **Lawyers*** forbids a **lawyer** from suing a **client** in another case **without** all parties' **consent**. *Restatement (Third) **Lawyers*** § 209.

Mr. Drinnon admits he never received a response from Mr. Pilgeram to the May 2025 letter telling him he was withdrawing. Therefore, it is unethical for Mr.

Drinnon or his firm to have continued such representation without actually communicating with Mr. Pilgeram,

Mr. Drinnon and his firm prosecuted his arbitration against Mr. Pilgeram's company and he informed Mr. Pilgeram he and his firm had to withdraw, and despite these facts he and his firm continued the pretend representation by filing more motions that Mr. Drinnon even admits were not contemplated by his May 14, 2025 letter. Finally, even the May 14, 2025 letter does not explain that Mr. Drinnon or his firm was going to continue to file motions such as the one Mr. Drinnon filed to open up discovery. Mr. Drinnon admits he had no authority to continue to defend the case, to request discovery be opened and or to generate more fees and costs to be generated or to pursue claims against Plaintiff out of either his desire for fees or his personal animosity towards Plaintiff.

## IV. Counsel's Unethical Fee Arrangement

Mr. Drinnon also tries to avoid another ethical issue; payment of fees. Mr. Drinnon did not produce an engagement letter or agreement with Mr. Pilgeram or with Mr. Pilgeram's estate. Mr. Pilgeram obviously never agreed to pay Mr. Drinnon any fee. Yet, Mr. Drinnon and his firm was representing these Defendants on a fee basis because they had initiated arbitration against their holding company. Mr. Drinnon does not explain who paid his bill for representing Mr. Pilgeram. Since it was not Mr. Pilgeram, then Mr. Drinnon's billing for representing Mr. Pilgeram and

the payment of fees if they were paid by someone other than Mr. Pilgeram violates Texas Ethics Rule 1.08 which states that an attorney may accept payment for legal services from a third party (someone other than the client) only if the client consents. Mr. Pilgeram was deceased and did not consent to anyone else paying his bill. Thus, Mr. Drinnon and his firm fostered litigation and filed motions for a dead person to generate fees that someone else paid or that is now going to be billed to Mr. Pilgeram's estate. All of this could have been potentially avoided if Mr. Drinnon had revealed last year that Mr. Pilgeram was not responding to Plaintiff's offer of settlement. This is especially true since by definition there was no requirement for Mr. Pilgeram to pay any money and he would automatically have complied with the terms of the offer by simply not possessing or using the tapes and not disparaging Plaintiff.

Upon information and belief, Mr. Drinnon and his firm did not respond to the settlement offer because he knew then Mr. Pilgeram was deceased but Mr. Drinnon was hoping to obtain some relief from the Court against Plaintiff for personal reasons. Mr. Drinnon tries to shift the blame to Plaintiff but that is impossible. In another case going on in state court during this time period, Plaintiff did challenge Mr. Drinnon's right to represent a Limited Liability Company when the sole member had been deceased before Mr. Drinnon had appeared in the case. In that case, Texas Rules of Civil Procedure has a specific rule that permits such challenges. Although

Plaintiff was successful in having Mr. Drinnon and his firm disqualified, it was a costly affair with Mr. Drinnon seeking sanctions against Plaintiff for having brought the motion.

In this federal case, there is no clear cut rule that permits the opposing party to challenge an attorney's authority to act. Plaintiff followed up on the settlement proposal and whether Mr. Drinnon had conferred with each of his clients. Mr. Drinnon deflected saying he was still waiting. That was last year and Mr. Drinnon never responded until the Court recently denied Mr. Pilgeram's and the other Defendants' Motion to Dismiss.

Mr. Drinnon and his firm were required to obtain authority directly from any potential client before they filed any pleadings in a case. They were required to communicate all settlement or resolution offers to a client for the client to make a decision. The basis of Plaintiff's ethical concerns is articulated in ABA Formal Opinion 95-397, which explains that the failure to disclose a client's death is tantamount to making a false statement of material fact under ABA Model Rule 4.1(a). That rule prohibits lawyers from knowingly making false statements or failing to disclose material facts when disclosure is necessary to avoid assisting in a fraudulent act. The implication is clear that continuing litigation without disclosing the death crosses the line from silence into misrepresentation. Courts have reinforced this principle by holding that lawyers have an affirmative duty to inform both the

court and opposing counsel of their client's death. In *Virzi v. Grand Trunk Warehouse & Cold Storage Co.*, 571 F.Supp. 507(E.D. Mich. 1983), the court vacated a settlement agreement after learning that plaintiff's counsel had knowingly failed to disclose his client's death prior to settlement. The court underscored that counsel's silence impaired the fairness of the proceedings and violated his duty of candor.

Ethical violations for this kind of concealment are not merely academic. Disciplinary actions have been imposed on attorneys who continued litigation without disclosing their client's death. The *In re Rosen* decision, resulted in the court finding the attorney's failure to disclose the death of his client to the court for several months warranted sanctions for his deceptive conduct. 198 P.3d 116 (Colo. 2008). Likewise, in *Kentucky Bar Ass'n v. Geisler*, 938 S.W.2d 578 (Ky. 1997), the Kentucky Supreme Court issued a public reprimand and suspension for an attorney who actively prosecuted a lawsuit for two years after the death of his client.

How is it possible for a lawyer to represent someone for several years who was deceased before the lawyer even began representing them? The law does not allow it and the lawyer has a duty to communicate with all of his clients and keep them informed of the case as well as any settlement offers. Mr. Drinnon's conduct will continue to delay this case until he gets Pilgeram's estate substituted into the case by the one with the proper authority. The lack of transparency on this issue in the Reply is simply a further attempt to obfuscate and deflect.

## PRAYER

WHEREFORE, Plaintiff prays the Court reject Mr. Drinnon's Reply and order his to identify the date of Mr. Pilgeram's death and identify the probate proceeding and the administrator or other person with authority over his estate to make agreements and incur potential liability. Until that occurs, Plaintiff does not believe the Court can act in regards to Mr. Drinnon's motion on Mr. Pilgeram's behalf even if his daughter and former business colleague all agree.

Respectfully submitted,
*/s/ LLOYD E. KELLEY*
LLOYD E. KELLEY
State Bar No. 11203180
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
kelley@lloydekelley.com
Pro-se

## CERTIFICATE OF SERVICE

I certify that on this May 13, 2026 my office served a true and correct copy of the foregoing instrument in accordance with the Federal Rules of Civil Procedure via the CM/ECF Filing System, which automatically served it through the electronic filing to all counsel of record.

By: */s/ LLOYD E. KELLEY*
LLOYD E. KELLEY